PRO SE OFFICE

IN THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4-21-2011

JOVANNY LIRIANO and
EMELY ORTIZ,

        Plaintiff,

   -vs-

ICE/DHS, MR. BRIAN J.
FLANAGAN, and ICE/DHS
AGENTS, et al.,

        Defendants,

_____/

:
:
:
:
:
:
:
:

Civil Case# 10 Civ. 6196(NRB)

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGEMENT

**AND NOW**, comes **Jovanny Liriano**, and his daughter, **Emely Ortiz**, acting pro se, and hereby respectfully files this response to Defendants' Motion to Dismiss or, in alternative, for summary judgment and states as follows:

Jovanny Liriano is a male, native and citizen of the Dominican Republic, and his daughter, Emely Ortiz an American citizen. Jovanny liriano is currently incarcerated at Moshannon Valley Correctional Center after having pleaded guilty to illegal reentry.

Plaintiff submitted a complaint pursuant to 42 U.S.C. § 1983 and under Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging abusive, activities of the agents that were totally reprehensible, abuse of civil

rights, civil liberties, negligent infliction of emotional trauma or distress and mental sufffering. Plaintiff sues the defendants, including United States, asserted pursuant to Federal Tort Claims Act.

Pursuant to 1915(a), the court must review the merit of a civil complaint in which the plaintiff seeks redress from a government entity or officer or employee of the government entity, and dismiss it if the action is frivolous or malicious, does not state a claim on which relief may be granted or seeks monetary relief against defendant who is immune from such relief. Federal Rule of Civil Procedure 12(b)(6), provides for dismissal of a compliant, or any portion of a complaints for failure to state a claim upon which relief can be granted. Court's apply the same standard under § 1915A, as when addressing a motion under Rule 12(b)(6), <u>Lagerstrom v. Kingston</u>, 463 F.3d 521, 62[lk] (17 Cir. 2006).

In the context of a motion to dismiss for failure to state a claim, the Supreme Court has stated that the "Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than lebels and conclusions, and a formulaic recitation of the elements of a cause of action will not do". <u>Bell Atlantic v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007). Instead the court held that the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." <u>Id.</u> 1965. Two weeks later the Supreme Court decided

**Erickson v. Pardus**, 127 S.Ct. 2197 (2007). In Erickson, the court also took up the issue of pleading standards, but this time in the context of pro se litigation. In Erickson, the court stated that "[s]pecific facts are not necessary" to meet the requirements of Rule 8(a). The court further noted that a "document filed pro se is to be liberally construed, and a pro se complaint, however, inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers". Id. at 2200. In an effort to reconale Twombly and Erickson, the Sixth Circuit has read those cases together to mean that "at some point the factual detail in a complaint may be so sketchy that the complaint does not provided the type of notice of the claim to which the defendant is entitled under Rule 8". Airborne Beepers & Video, Inc. v. At&T Mobility, 499 F.3d 663, 667 (7th Cir. 2007).

## STANDARD OF REVIEW

In addition, to above foregoing, a complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007)(rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). See also Ashcroft v. Igba, ___ U.S. ___, 129 S.Ct. 1937, 191 U.S. (2009) (holding that, while the complaint need not contain detailed

3.

factual allegations, it must contain more than a "formulaic recitation of the elements' of a constitutional claim and must state claim that is plausible n its face)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein). The Court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004)(citing Morse v. Lower Merion School Distrt., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. Additionally, a civil rights claim "must contain specific allegati of fact which indi-- cate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987)).

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the pleadings, depositions,

4.

answers to interrogatories and admissions on file, together
with the affidavits, if any, show that there is no genuine issue
of material fact and the movant is entitled to judgment as a
matter of law. Fed. Rule of Civ. Proc. 56(c). Summary judgment
may be granted against a party who fails to adduce facts suffic-
ient to establish the existence of any element essential to
that party's case, and for which that party will bear the burden
of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325
(1986)(party can move for summary judgmentpointing out to the
district court that there is an absence of evidence to support
the non-moving party's case."). The moving party bears the
initial burden of identifying evidence that demonstrates the
absence of a genuine issue of material fact. Once that burden
has been met, the non-moving party must set forth" . . . specific
facts showing that there is a genuine issue for trial . . ."
or the factual record will be taken as presented by the moving
party and judgment will be entered as a matter of law. Matsushita
Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). An
issue is genuine only if the evience is such that a reasonable
jury could return a verdict for the non-moving party. Anderson
v. Liberty Lobby, Inc., 477 U.S @$@ (1986). The inquiry, then
involves determining" 'whether the evidence presents a sufficient
disagreement to require submission to a jury or whether it is
one-sided that one party must prevail as a matter of law.'"
Brown v. Grabowski, 922 F.2d 1097, 111 (3d Cir. 1990), cert.

5.

denied, 501 U.S. 1218 (1991)(quoting Anderson, 477 U.S. at 251-52). If a court concludes that "the evidence is merely color-able . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U,S. at 249-50.

According to the complaint dated July 1, 2010, plaintiff alleged that arises from his arrest for criminal case number 09-cr-193-(RMB), on or about February 16, 2009 at approximately 1:30 p.m. to 6:30 p.m. at 2467 Valentine Avenue, Apartment number 2D Bronx, New York 10458.

Plaintiff  in this case is not advancing argument whether an arrest warrant was issued, commanding any authorized federal law enforcement officer to arrest Liriano on suspicious of illegal reentry. Plaintiff is contesting the fact that when the officers arrived their actions are reprehensible, absurd and totally result into damaging his child life.

On these officers arrival, they were banging on the door with full force. An intelligent or proper knock on the door would have been appropriate to resolve a simple arrest. Worthy to note here is that when they arrived and began to bang on the door. That action created a panic environment for plain-tiff's daughter. The officers heard the child crying and they were aware of plaintiff's effort to calm her down. It was the loud bang on the door that frightened plaintiff's daughter. The ICE were not only banging on the door loudly, they were using profanity and serious threats. Such profanity and threat

includes "open the fucking door or we will knock it down". The profanity and threat increases very moment and grew to a higher degree that plaintiff's daughter urinate on her-self. (Compl. ¶4, paragraph 19 and 20).

When plaintiff's daughter urinate on herself, plaintiff notice the extreme panic and terrified on her daughter, his obligation was to make sure that his daughter does not go into a serious shock than what she was experiencing. Plaintiff assume that one person among the officers would be intelligent enough to have sympathy for a child, i.e., caution the rest officers. Basically, plaintiff was hoping that the ICE agents oppressive and aggressive, screaming, profanity would stop, then he would open the door. Amazingly, the banging on the door, aggressive and oppressive behavior never stopped. Plaintiff's daughter was afraid and frightened and said to plaintiff - "Dad, they are going to kill us". (Compl. ¶5, paragraph 21, 22, and 23). Realizing that the ICE agents were going to continue in their ICE home raid strategy, plaintiff spoke up again to the ICE agent seeking a simple way to resolve the situation consider-ing his Eight year old circumstances. Even though, the agent were aware of the his child panicking condition. Plaintiff sopke up, informing the ICE Agents that his daughter was very nervous and in great shock. THe ICE Agents said, plaintiff need not to worry. Plaintiff requested for more time, so that he could further calm his daughter down  before he open the door. The ICE agents continued to use profanity, screaming aloud, insisting

and saying that "open the fucking door or it will be knocked
down". Plaintiff requested that the ICE agents call Mr. Albert
Castillo, the owner of the laundry across the street, so he
could ... secure plaintiff's daughter. Despite the ICE Agents
knowledge that a child life was involved and that plaintiff's
situation was not of a high priority targets but rather a
collateral arrest of mere civil immigration status violations,
the ICE agents heavily armed came through the door at gun point
and pushed plaintiff against the wall. Despite plaintiff's plead-
ing in consideration of his Eight year old child, the ICE agents
ignored the pleadings for his daughter's psychological state.
Then pushed their way in when plaintiff opened the door. (Compl.
¶6, paragraph 29, 30, 31, 32, 33, and 34).

Plaintiff make sure that his daughter was secured by Mr.
Albert Castillo when she was taken outside. May people were
present to witness the state of panic and level of nervousness
Emely (Plaintiff daughter) was in, when she further saw the
ICE Agents. (Compl. ¶7, paragraph 35 and 36).

The abuse in this matter was unnecessary. The high profile
swat-styled raids on plaintiff's apartment indeed damaged plain-
tiff daughter's life. No one would know the extent of damage
the ICE agents' raid caused on a Eight year old child. Indeed,
despite the fact that plaintiff was pushed to the wall, apprehen-
ded and handcuffed, the causing, profanity and yelling continued.
(Compl. ¶7, paragraph 38, and 39).

8.

Once the ICE agent gain entrance, they immediately began their interrogation tactics, even though, plaintiff explained that there was only one room in the apartment. While the ICE agent were physically destroying the apartment, the tenant (a woman) arrived at the scene. At that point Plaintiff was restrained, handcuffed. The ICE agents destroyed personal properties, threw the properties on the floor, and upon all their search nothing illegal was found. Indeed, plaintiff was apprehended, there was no need to trashed and destroyed the properties in the apartment. The warrant to arrest plaintiff may be valid, but perhaps, the destroying, abuse, profanity and destroying a child life was not part and parcel of the search warrant. Indeed, the ICE agents failed to observe constitutional requirement in carrying out their duty and, or home raid operation. They indeed, abused their authority and acted in a deeming manner towards the safety and well-beings of plaintiff's child. (Compl. ¶8, paragraph 42 and 47).

### EMELY ORTIZ, (EIGHT YEAR OLD) SUFFERED EMOTIONAL TRAUMA IN THE HAND OF DEFENDANTS

The misconduct and abuse by the ICE agents through their supervisor caused plaintiff's daughter [Emely] to develop symptoms of anciety, sadness related to the father's situation, including, nighmares, fear, feel like crying for no apparent reason, irritability and excessive worry because of the stressful event. Emely is going through psychological treatments at Child and Family Institute. There is tendency that Emely would never be

9.

the same. Emely still today ask questions and says things like, she misses her daddy, why did police bit my daddy and she is very depressed. It was also reported by Emely's mother that Emely always frozen and afraid when she came across any police or law enforcement in uniform. Indeed, the ICE agent's misconduct has caused Emely's anxiety and uncomfortable behavior or habits. Emely stated to receive services since November 26, 2008 at the Child and Family Institute Outpatient Department. (See Compl. ¶ 10, paragraph 56,57,58,59,60, and 61).

Through the Child and Family Institute, Staff Psychologist Evelyn Santiago-Fernandez notice that --- recently, Emely presents with symptoms of anxiety and sadness related to the father's situation. Her symptoms includes: Nightmares, Fear, Feels like crying for no apparent reason, irritability and and excessive worry because of the stressful event. The treatment for Emely focuses in expressing feelings and concerns in an assertive way. Also, the therapeutic process must develop a relationship between therapist and patient in order to help her process her emotions. The Clinical recommended that Emely continue therapy sessions for externalizing behaviors and help adjust to her current stressors. Emely has been very much affect-ed by this whole situation, since she was present at the time of plaintiff's arrest. (Compl. ¶9, paragraph 50,51,52,53 and 54).

Emely wentinto shock at the initial loud bang on the door and as a father, noticing that she needed help, plaintiff

focused on assisting Emely to over-come such devastating develop-
ed anxiety. Emely was just Eight year old when the incident
happened. It was incumbent on plaintiff to calm her down, in
order to prevent a much more serious devastating trauma.

Upon information and belief, there was nothing on the search
warrant that specifically indicate that the ICE agent must or
should bang on the door when identifying themselves as an
officer, nor was nothing written on the warrant that gave the
officers power to use profanity and thus yell at the occupants
of a house. The Agents went beyond the scope of the search
warrant, when they failed to properly knock on the door. In
fact, they created a very panic and shocking situation for
a Eight year old child. As much as the agent have the right
to knock on the door and wait for an answer, so as the occupants
have the obligation to quietly open their door. That was not
the case in this matter. The ICE agent on arrival were banging
on the door. That really scared and frightened the Eight year
old child.

Under the New York law, a plaintiff may recover for negligent
infliction of emotional distress only if she "contemporaneous
observ[ed] . . . serious physical injury or death inflicted
by the defendant's conduct on a member of the plaintiff's immedi-
ate family in his or her presence, Bovsun v. Sanperi, 61 N.Y.
2d 219, 223-24 (1984), or if she suffers emotional distress
caused by the "defendant's breach of a duty which unreasonably
endangered [plaintiff's] own physical safety." Mortise v. United

102 F.3d 693, 696 (2d Cir. 1996). Plaintiff stated in his complaint that his daughter was a nervous state and in grate shock. (Compl. ¶6, paragraph 29). Despite plaintiff's pleading in consideration of his Eight year old child, the ICE Agent ignored the pleadings for his daughter's psychological state. (Compl. ¶34, paragraph 34). The abuse in this matter was unnecessary. The high profile swat-styled raids on plaintiff's apartment, psychologically damaged plaintiff's daughter life. No-one would know the extent of damage the ICE agents raid ... caused a Eight year old child. (Compl. ¶7, paragraph 38). As such, the concern for plaintiff's daughter has been a mental anguish suffered by plaintiff himself. Plaintiff's daugher attended counseling for her hyperactive deficient. The therapist in Emely's case has noted several other effects on her since the event occurred. (Compl. ¶8, paragraph 45 and 46). Emely has been attending sessions on a weekly basis. The working diagnosis is attention deficit hyperactivity Disorder-combined. (Compl. ¶9, paragraph 52). Symptoms developed were anxiety, sadness, nightmares, fear, feeling of crying for no apparent reasons, irritability and excessive worry related to stressful event. (Compl. ¶9, paragraph 50). Plaintiff clearly state a claim of infliction of emotional distress. The emotional distress was documented Child and Family Institute. Indeed, plaintiff has satisfied the requirement . . . and "ground" on which to rests. The conducts, acts and omissions of the Defendants caused plaintiff and his daughter unnecessary

suffering, thus, suffered emotional injury and trauma. The
treatment for Emely focuses in expressing feelings and concerns
in an assertive way. Also, the therapeutic process ... develop
a relationship between therapist and patient on order to help
[Emely] to process her emotions.

Accordingly, the defendants arguments must fail and the
motion to dismiss or, in the alternative, for summary judgment
should be denied as a matter of law.


B.   FTCA ISSUE:

The defendants argued that the court lacks jurisdiction
over claims arising under the federal tort claims act because
Liriano instituted the lawsuit fewer than six months after
filing his administrative claim and 2) the FTCA should also
be dismissed for failure to state a claim. Plaintiff made above,
argument to substantiate the risk and suffering of serious
psychological or emotional, and mental trauma. Suffice it to
say that, that will not be restated here. Through plaintiff's
complaint, defendant were in position to know and should have
known of the report from the Child and Family Institute and
the treatment rendered to [Emely] daughter of plaintiff. The
FTCA claim was presented to the appropriate Federal agency.
The complaint also stated the Agents destroyed personal propert-
ies. All defendants argument in reference to FTCA must fail
and has no merit.

C.    THE DEFENDANTS WERE NOT ELIGIBLE
      FOR QUALIFIED IMMUNITY

The plaintiff asserted his claims pursuant to the Federal
Tort Claims Act and Bivens v. Six Unknown Federal Narcotics
Agents, 403 U.S. 388 (1971). Harlow dealth with a § 1983 action,
but as noted supra, the contours of claims and defense under
Bivens and § 1983 are parallel and largely consistent. This
is specifically true in the context of the scope of qualified
immunity. It is "untenable to draw a distinction for purpose
of immunity law between suits brought agaisnt state officials
under § 1983 and suits brought directly under the constitution
against federal officials." Butz v. Economou, 438 U.S. 478,
504, 98 S.Ct. 2894, 57 L.Ed 2d 895 (1978).

The defendants here interpreted plaintiff's complaint as
"And once there, they knocked on the door and announced their
presence, and conducted conversation with Liriano through the
closed door that Liriano refused to open." The above statement
is opposite of the event, and interpretation of plaintiff's
complaint is inaccurate. The action of the ICE agents began
on arrival. Defendants began to bang on the door. The loud
bang on the door sparks the shock experienced by plaintiff's
daughter.  Government officials are entitled to qualify immunity
if "(1) their conduct does not violate clearly established
constitutional rights, or (2) it was objectively reasonable
for them to believe their acts did not violate those rights."
Martinez v. Simonetti, 202 F.3d 625, 633-34 (2d Cir. 2000).

14.

Generally, court perform a two-step analysis in determining
whether an official is entitled to qualified immunity. "The
threshold inquiry a court must undertake in a qualified immunity
analysis is whether plaintiff's allegations, if true, establish
a constitutional violation." hope v. Pelzer, 536 U.S. 730,
736 (2002)(citation omitted). If a plaintiff adequately alleges
a constitutional violation, a court must then determine whether
the constitutional right at issue was clearly established at
the time of the alleged infringement. See Saccier v. Katz,
533 U.S. 194, 201 (2001). The two-step procedure described
in Saucier is "often appropriate," but not mandatory. See
Pearson v. Callahan, 129 S.Ct. 808, 818 (2009)(retreating from
Saucier). Rather, as the Supreme Court explained in Pearson,
the Court considering a motion based on qualified immunity
may, in appropriate circumstances, consider whether a right
was clearly established before considering whether the plaintiff
has adequately alleged the violation of a constitutional right.
See Pearson, 129 S.Ct. at 818-20.

To ensure that government officials do "not err always on
the side of caution because they fear being sued," the qualified
immunity standard "gives ample room for mistaken judgments
by protecting all but the plainly incompetent or those who
knowingly violates the law." Hunter v. Bryant, 50@ U.S. 224,
229 (1991). Only where "no officer of reasonable competence
could have made the same choice in similar circumstances" are
an officer's actions "objectively unreasonable" and qualified

15.

immunity unwarranted. <u>Anthony v..City of New York</u>, 339 F.3d
129, 138 (2d Cir. 2003); <u>see</u> <u>also</u> <u>Saucier</u>, 533 U.S. at 206
("Officers can have reasonable, but mistaken, belief as to
the facts establishing the existence of probable cause or exig-
ent circumstances...and in those situations courts will not
hold that they have violated the Constitution."). For purposes
of qualified immunity, the standard is "not whether the offic-
ers' conduct have been improved upon," but rather whether their
beliefs and actions were reasonable at the time. <u>Lewis v. City</u>
<u>of Mount Vernon</u>, 984 F. Supp. 748, 756 (S.D.N.Y. 1997). Plaintiff
informed the agent about the condition of his daughter. Plaintiff
cry for mercy to calm her daughter down was ignored. The agent
could hear his daughter crying. It was plaintiff's daughter
extreme shock and shaking that feared plaintiff most. Emely
urinate on herself. Even, if the lawful arrest were not a bar,
under New York, a claim for intentional infliction of emotional
distress requires a showing of (1) extreme and outrageous cond-
uct; (2) intent to cause, or reckless disregard of a substantial
probability of causing, severe emotional distress; (3) a causal
connection between the conduct and the injury; and (4) severe
emotiotional distress. <u>See</u> <u>Stuto v. Fleishman</u>, 164 F.3d 820,
827 (2d Cir. 1999)(citing <u>Howell v. New york Post Co.</u>, 81 N.Y.
2d 115, 121 (1993)). "Liability has been found only where the
conduct has been so outrageous in character, and so extreme
in degree, as to go beyond all possible bounds of decency, and

16.

to be regarded as atrocious, and utterly intolerable in a civilized society." **Id.** (citation omitted). Herein, this case, a child was involved. Plaintiff pleaded for the safety of his child mental and emotional state. Indeed, such pleadings were totally ignored. As aforementioned plaintiff states and established a claim for negligent infliction of emotional distress. Therefore, the ICE agent, the defendant Flanagan and others are not entitled to qualified immunity on any constitutional claim against the them.

Accordingly, the defendants are not entitled to qualified immunity at this juncture.

## Conclusion

In light of the above foregoing reasons, plaintiff prays and request that the honorable court deny Defendants motion to dismiss or, in alternative, for summary judgment and grant plaintiff's claims of infliction of emotional distress, negligence or disregard for the security and safety of a child and father's emotional distress.

Date: April 15, 2011.

                                    Respectfully Submitted,

                                    _Jovany Liriano_
                                    Jovanhy Liriano
                                    BOP# 61949-054
                                    MVCC Unit C-3
                                    555 I Geo Drive,
                                    Philipsburg, PA 16866

## CERTIFICATE OF SERVICE

I, Jovanny Liriano, the Plaintiff acting pro se and hereby certify and swear under pain and perjury under the laws of the United States and states that the foregoing Plaintiff's Response to Defendants' motion to Dismiss or, in the alternative, for Summary Judgment was served on this _15_ day of April, 2011, upon each of the following:

> The Clerk of the Court
> United States District Court
> Southern District of New York
> 500 Pearl Street,
> New York, NY 10007

> and

> David Bober
> Assitant United States Attorney
> 86 Chambers Street, 3rd Floor
> New York, NY 10007

Respectfully Submitted,

Jovanny Liriano
BOP# 61949-054
MVCC Unit C-3
555 I Geo Drive,
Philipsburg, PA 16866

18.