```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
JOVANNY LIRIANO and EMELY ORTIZ,

                         Plaintiffs,         MEMORANDUM AND ORDER

         - against -                         10 Civ. 6196 (NRB)

ICE / DHS, BRIAN J. FLANAGAN and
ICE / DHS AGENTS, et al.,

                         Defendants.
------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


Plaintiffs Jovanny Liriano ("Liriano") and his daughter Emely Ortiz ("Emely"), appearing pro se, bring this suit against the U.S. Immigration and Customs Enforcement ("ICE"), ICE Deportation Officer Brian J. Flanagan ("Officer Flanagan"), and "six to seven" unknown ICE agents who participated in the arrest of Liriano.  Plaintiffs assert (i) claims against the United States[1] under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., for physical and emotional trauma suffered as a result of Liriano's arrest, and (ii) claims against the individual officers under Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), for unspecified constitutional violations.  Presently before

---

[1]  Although ICE is the named defendant rather than the United States, the United States is the only proper defendant in an action under the FTCA.  See C.P. Chem. Co. v. United States, 810 F.2d 34, 37 n.1 (2d Cir. 1987) (citing 28 U.S.C. § 2679(a)).

1

this Court is defendants' motion to dismiss the FTCA claims pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure and to grant summary judgment on the Bivens claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons set forth below, defendants' motion is granted in its entirety.

## BACKGROUND[2]

### I.  Factual Background

Liriano, a citizen of the Dominican Republic, was deported to the Dominican Republic in June 2005 after a 2001 conviction in New York for sale of a controlled substance.  (R. 56.1 ¶ 1,

---

[2] The background is derived from plaintiffs' complaint, Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1, filed March 25, 2011 ("R. 56.1"), the Declaration of Brian J. Flanagan in Support of Defendants' Motion for Summary Judgment ("Flanagan Decl."), filed March 25, 2011, and the exhibits annexed thereto.  For purposes of reviewing the motion to dismiss, all nonconclusory factual allegations in the complaint are accepted as true. See S. Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 100 (2d Cir. 2009).  With respect to the motion for summary judgment, we note that plaintiffs failed to comply with Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), which mandates that "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party . . . ."  Local Rule 56.1(b).  While we are thus entitled to treat all facts in defendants' 56.1 statement as admitted, see Local Rule 56.1(c), we employ our broad discretion in this area and conduct our own review of the record to confirm defendants' recitation of the facts and supplement those facts where necessary.  See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.  Thus . . . while a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement.") (internal citations and quotation marks omitted). After engaging in such a review, we note that the facts recited in defendants' 56.1 statement are derived almost entirely from court documents pertinent to Liriano's arrest and subsequent plea.

2

Compl. ¶ 12).   Liriano illegally re-entered the United States following his deportation.  (Compl. ¶ 12).

On February 3, 2007, Liriano was arrested in Manhattan by the New York City Police Department for violation of a local law.  (R. 56.1 ¶ 2.)   Liriano was fingerprinted in connection with this arrest, and ICE was subsequently notified that the fingerprints taken by the Police Department matched the fingerprints taken of Liriano at the time of his 2005 deportation.

On February 14, 2009, a criminal complaint was filed against Liriano in the Southern District of New York, charging him with one count of illegal re-entry by a felon, in violation of 8 U.S.C. § 1326.  (R. 56.1 ¶ 4.)  That same day, Magistrate Judge Gabriel W. Gorenstein signed an arrest warrant for Liriano.  (R. 56.1 ¶ 5.)

Also on February 14, 2009, Magistrate Judge Gorenstein ordered the relevant cell phone service provider to furnish technical assistance, in the form of GPS tracking technology, to ascertain the physical location of a cell phone believed to belong to Liriano.  (R. 56.1 ¶ 6.)  Magistrate Judge Gorenstein also authorized the use of a pen register with a caller identification and/or trap and trace device on the cell phone that Liriano was believed to be using.  (R. 56.1 ¶ 6.)  Based on information obtained from the pen register and the GPS tracking

3

technology, ICE officials located Liriano's apartment at 2467 Valentine Avenue in the Bronx, New York. (Flanagan Decl. ¶ 11.)

On February 16, 2009, a team of ICE officers led by Officer Flanagan arrived at the Bronx apartment to arrest Liriano. Liriano was inside the apartment with Emely, his eight-year old daughter. After the officers announced their presence, Liriano "decided not to open the door." (Compl. ¶ 16.) Liriano claims that he chose not to do so "because his daughter was frightened by the excessive bang or knock on the door." (Compl. ¶ 16.) The situation developed into a protracted standoff, during which plaintiffs allege the ICE officers "were using profanity and serious threats" and Emely's fear escalated to the point that she urinated on herself. (Compl. ¶¶ 18-21.) A full five hours after the ICE officers arrived, Liriano finally opened the door to the apartment. (Compl. ¶¶ 13, 18.) Plaintiffs allege that when Liriano did open the door, the officers "heavily armed came through the door at gun point and pushed [Liriano] against the wall." (Compl. ¶ 32.)

Following this arrest, Liriano pleaded guilty to the illegal re-entry charge and was sentenced by Judge Berman to thirty-eight months imprisonment. (R. 56.1 ¶¶ 9-10.)

II.  **Procedural History**

Plaintiffs filed an administrative claim against ICE on May 19, 2010.  (Compl. at A-18.)  The claim, filed on a Form SF-95, sought relief for emotional trauma suffered by plaintiffs as a result of the circumstances surrounding Liriano's arrest.  (Compl. at A-18.)  ICE has not yet adjudicated this administrative claim.

Plaintiffs filed the instant complaint on August 18, 2010.  The complaint seeks monetary damages for the physical and emotional trauma suffered by plaintiffs. Specifically with regard to Emely, plaintiffs allege that she has developed severe anxiety attributable to defendants' actions, for which she is now undergoing treatment at the Child and Family Institute in Manhattan.  (Compl. ¶¶ 60-61.)  Plaintiffs also request that this Court enter preliminary and permanent injunctions requiring ICE to properly train its officers in order to avoid the abuse allegedly suffered by plaintiffs.  (Compl. at 13.)

## DISCUSSION

I.  **Legal Standard**

Defendants contend that plaintiffs' claims under the FTCA should be dismissed pursuant to Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The defendants further contend that summary judgment should be granted on the Bivens

claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.

As a general matter, a pro se complaint is reviewed under a more lenient standard than that applied to "formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Courts must therefore interpret pro se pleadings "to raise the strongest arguments that they suggest." Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

**A. Motion to Dismiss Purusant to Rule 12(b)(1)**

A motion to dismiss for lack of subject matter jurisdiction must be granted when the district court lacks the statutory or constitutional power to adjudicate the claim. Morrison v. Nat'l Austrl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). When subject matter jurisdiction is challenged, the plaintiff bears the burden of establishing a factual basis for jurisdiction. Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

**B. Motion for Summary Judgment Pursuant to Rule 56**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise

6

properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)) (internal alterations omitted); see also Quarles v. Gen. Motors Corp. (Motors Holding Div.), 758 F.2d 839, 840 (2d Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

On a motion for summary judgment, the initial burden rests with the moving party to make a prima facie showing that no issues of material fact exist for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 330-31 (1986). Once this showing is made, "[t]o defeat summary judgment, the non-movant must produce specific facts" to rebut the movant's showing and to establish that there are material issues of fact requiring trial. Wright v. Coughlin, 132 F.3d 133, 137 (2d Cir. 1998) (citing Celotex, 477 U.S. at 322). In determining whether a genuine issue of material fact exists, a court must view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. See Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010).

Even though plaintiffs are proceeding pro se, this does not relieve them of their duty to meet the requirements necessary to

7

defeat a motion for summary judgment.  <u>Jorgensen v. Epic/Sony Records</u>, 351 F.3d 46, 50 (2d Cir. 2003).

## II.  <u>**FTCA Claims**</u>

The FTCA waives the sovereign immunity of the United States for the common law torts committed by its employees while acting within the scope of their employment.  <u>See</u> 28 U.S.C. § 1346(b)(1).  However, exhaustion of administrative remedies is a prerequisite to suit in federal court under the FTCA.  <u>See</u> <u>id.</u> § 2675(a).  A plaintiff may not bring suit under the FTCA unless the plaintiff first brought a claim to the appropriate Federal agency and that agency either made a final denial of the claim or failed to make a disposition on the claim within six months after it was filed.  <u>See id.</u>

Here, plaintiffs filed their administrative claim on May 19, 2010[3] and brought suit less than three months later, on August 18, 2010.  Defendants maintain that this Court must dismiss the complaint for lack of jurisdiction because the complaint was brought before the administrative claim was denied

---

[3] Liriano did send a letter to the Department of Homeland Security on October 20, 2009, containing similar allegations to those in the Form SF-95 he later submitted. (<u>See</u> Compl. at A-15.)  However, the October 20, 2009, letter does not qualify as a formal administration complaint for purposes of the FTCA's exhaustion requirement.  While individuals may submit administrative grievances through means other than a Form SF-95, in order to serve as a formal complaint, any "other written notification" must be "accompanied by a claim for money damages in a sum certain." 28 C.F.R. § 14.2(a).  Because the October 20, 2009, letter did not specify an amount of damages being sought by plaintiffs, it did not include a claim for a "sum certain" and therefore "did not constitute the filing of a formal administrative claim for FTCA purposes." <u>Johnson v. Smithsonian Inst.</u>, 189 F.3d 180, 190 (2d Cir. 1999).

8

and before six months had passed after the administrative claim was filed.  We are compelled to agree with this assessment.  In McNeil v. United States, 508 U.S. 106, 110 (1993), the Supreme Court held that the FTCA's exhaustion requirement is "unambiguous" and strict adherence to the statutory command is therefore necessary.  Following this guidance, the Second Circuit has consistently held that the FTCA's exhaustion requirement is jurisdictional and cannot be waived.  See, e.g., Garland-Sash v. Lewis, 348 F.App'x. 639, 642 (2d Cir. 2009) (citing Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005); Keene Corp. v. United States, 700 F.2d 836, 841 (2d Cir. 1983)).  The requirement that prematurely filed FTCA claims be dismissed holds even when, as here, the FTCA claims would be ripe if re-filed at the date of the court's decision.  See McNeil, 508 U.S. at 112-13; see also Tarafa v. B.O.P. MDC Brooklyn, No. 07-CV-00554 (DLI)(LB), 2007 WL 2120358, at *3 (E.D.N.Y. July 23, 2007) ("[A]lthough it is this court's view that dismissing [plaintiff's] FTCA claim and requiring him to re-file is the ultimate exercise of form over substance, this court must dismiss [plaintiff's] FTCA claim under the Supreme Court's dictates in McNeil.") (internal citation and quotation marks omitted).  The fact that plaintiffs are acting pro se does not alter this outcome.  See McNeil, 508 U.S. at 113 ("[W]e have never suggested that procedural rules in ordinary civil

litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."). Therefore, we are required to dismiss plaintiffs' FTCA claims without prejudice.[4]

### III. Bivens Claims

Plaintiffs assert Bivens claims against Officer Flanagan and the other arresting ICE officers for unspecified constitutional violations. Liberally construing plaintiffs' allegations, we take the complaint to assert claims for unlawful home entry and excessive force, in violation of the Fourth Amendment.

Defendants contend that Officer Flanagan and the other arresting officers are entitled to qualified immunity on any constitutional claims asserted against them. "When considering a government official's qualified immunity claim, we ask first

---

[4] While plaintiffs are permitted to re-file their FTCA claims, we note that after a brief review of the claims, they appear to be without merit. We interpret plaintiffs' complaint as asserting claims for intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), and property damage. Any IIED or NIED claims are likely precluded by the fact that the alleged injuries arose as a result of a lawful arrest. See Csoka v. County of Suffolk, 85 F. Supp. 2d 117, 123 (E.D.N.Y. 2000) ("A lawful arrest cannot support a claim for intentional or negligent infliction of emotional distress."). Even without this barrier to recovery, plaintiffs would likely not be able to recover on their IIED claim because defendants' behavior does not appear to rise to the exceedingly high level of outrageousness required under New York law to sustain an IIED claim. See Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999). Plaintiffs would likely also be unable to recover on an NIED claim for Emely's distress because Emely did not witness any serious injury inflicted on her father, and defendants' actions do not appear to have actually endangered Emely's physical safety. See Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996) (describing the elements of an NIED claim under both the "direct duty theory" and the "bystander theory"). Finally, any claim for property damage would likely fail because plaintiffs did not seek relief for property damage in their administrative complaint and thus the claim would not meet the FTCA's exhaustion requirement.

whether, 'taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right.'" Mills v. Fenger, 216 F.App'x. 7, 8 (2d Cir. 2006) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)) (internal alterations omitted).

**A. Unlawful Entry**

"An arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." United States v. Lovelock, 170 F.3d 339, 343 (2d Cir. 1999) (quoting Payton v. New York, 445 U.S. 573, 603 (1980)) (internal alteration omitted). Thus, when asking whether officers are authorized to enter a home to execute a warrant for an individual's arrest, "the proper inquiry is whether there is a reasonable belief that the suspect resides at the place to be entered . . . and whether the officers have reason to believe that the suspect is present." United States v. Lauter, 57 F.3d 212, 215 (2d Cir. 1995).

In the instant matter, Magistrate Judge Gorenstein had approved an arrest warrant for Liriano on a complaint charging illegal re-entry. Magistrate Judge Gorenstein had also issued a court order permitting ICE officers to use GPS technology to track the precise physical location of Liriano's cell phone. This tracking information allowed the officers to locate

Liriano's apartment in the Bronx.  Liriano admits that after the officers arrived at the apartment and announced their presence, he engaged in continued conversations with them during the extended period in which the door to the apartment remained closed.  Given this evidence, it is clear that the officers held a reasonable belief that Liriano resided at the Bronx apartment, and it is implicit in Liriano's allegations that the officers had reason to believe Liriano was present at the time they eventually entered the apartment.  Plaintiffs are therefore unable to sustain a claim that the officers' conduct constituted unlawful home entry.

**B. Excessive Force**

To prevail on a Fourth Amendment claim of excessive force, a plaintiff must show that the amount of force used by law enforcement was "objectively unreasonable in light of the facts and circumstances confronting [the officers], without regard to [their] underlying intent or motivation." Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).  Officers' actions are not to be judged in hindsight, but from the perspective of a reasonable officer on the scene.  Id.  Thus, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment," Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004) (quoting Graham, 490 U.S. at 396)

12

(internal alteration omitted), and officers may need to use some degree of force in the course of an arrest, particularly where they are forced to make split-second judgments in tense situations.

Plaintiffs' complaint can be read to allege two distinct forms of excessive force: (1) the profanity and verbal threats made by the arresting officers during the protracted period when Liriano was unwilling to open the apartment door, and (2) the aggressive method by which the arresting officers entered the apartment once Liriano did open the door.

Plaintiffs' claims of verbal abuse are insufficient to establish a constitutional violation as a matter of law. "[V]erbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right . . . ." Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (internal quotation marks omitted); see also Harwe v. Floyd, No. 3-09-cv-1027 (MRK), 2011 WL 674024, at *1 (D. Conn. Feb. 17, 2011) ("[T]he Fourth Amendment to the United States Constitution does not require . . . police officers to be polite"); Davidson v. Tesla, No. 3-06-cv-861 (JCH), 2008 WL 410584, at *4 (D. Conn. Feb. 13, 2008) ("[Plaintiff's] complaint that [the officer] behaved towards him in an angry, hostile, aggressive and belligerent manner [] fails

13

to establish a cognizable constitutional injury as a matter of law.") (internal quotation marks omitted).

Plaintiffs also fail to establish a viable claim of excessive force with respect to the manner in which the officers entered the apartment. Plaintiffs simply assert that the officers came through the door "heavily armed . . . at gun point and pushed [Liriano] against the wall." (Compl. ¶ 32.) It was not excessive for the officers to draw their weapons when entering the apartment pursuant to the arrest warrant, see Wims v. N.Y. City Police Dept., No. 10 Civ. 6128 (PKC), 2011 WL 2946369, at *5 (S.D.N.Y. July 20, 2011), especially given Liriano's refusal to open the apartment door for a full five hours. Moreover, plaintiffs have not alleged any comments or other circumstances to suggest that the officers displayed their weapons in a uniquely threatening manner so as to constitute excessive force. See Mills, 216 F.App'x. at 9-10. Plaintiffs' allegation that the officers pushed Liriano against the wall likewise fails to present an actionable constitutional claim because it does not suggest a level of force that is more than de minimis. See Wims, 2011 WL 2946369, at *4 (citing Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993)). This conclusion is again buttressed by the tense circumstances surrounding the officers' entry into the apartment.

## IV. Injunctive Relief

Finally, plaintiffs' claims for preliminary and permanent injunctions must be dismissed because plaintiffs lack standing to request such relief.

To establish standing when seeking injunctive relief, a plaintiff must show that he is "under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." Summers v. Earth Island Inst., 555 U.S. 488, 129 S.Ct. 1142, 1149 (2009). When a plaintiff seeks injunctive relief based on a prior injury attributable to the defendants, the plaintiff must demonstrate that he is likely to suffer future injury due to "a recurrence of the allegedly unlawful conduct." Amnesty Int'l. USA v. Clapper, 638 F.3d 118, 136 (2d Cir. 2011) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 107 n.8 (1983)).

There is no likelihood that Liriano will be subject to future similar treatment because he will be deported from the United States after he serves his sentence for illegal re-entry. Plaintiffs also do not present any facts demonstrating that Emely will likely suffer future injury as a result of actions similar to those that occurred during the arrest of her father.

15

Therefore, plaintiffs' request for injunctive relief is dismissed.

## CONCLUSION

For the foregoing reasons, we grant defendants' motion and dismiss the complaint in its entirety.

SO ORDERED.

Dated:   New York, New York
         October 25, 2011

                               _____
                               NAOMI REICE BUCHWALD
                               UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to the following:

**Pro Se Plaintiff**
Jovanny Liriano, #61949-054
Moshannon Valley Correctional Center
Unit A, Pod 3
555-I Cornell Drive
Philipsburg, PA 16866-0798

**Attorney for Defendants**
David Bober
United States Attorney Office
One St. Andrew's Plaza
New York, NY 10007

16